**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BADER FAMILY FOUNDATION<br><br>                  Plaintiff,<br><br>    v.<br><br>U.S. EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,<br><br>             Defendant. | Case No. 23-cv-976 (JMC) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bader Family Foundation (Bader) filed a Freedom of Information Act (FOIA) request with Defendant U.S. Equal Employment Opportunity Commission (EEOC), seeking eight categories of information. ECF 1 at 1–5.[1] EEOC failed to respond, and Bader filed this suit. ECF 1. The EEOC now moves to dismiss in part, or in the alternative for partial summary judgment, arguing that three of the eight categories of records Bader seeks are not "reasonably describe[d]." ECF 6; *see* 5 U.S.C. § 552(a)(3)(A). The Court finds it appropriate to treat the motion as one for summary judgment. On the record before the Court, Bader's request survives the "reasonably describes" analysis. As such, the Court will **DENY** the EEOC's motion. ECF 6.

## I.     BACKGROUND

The following facts are not in dispute. Bader submitted a FOIA request to the EEOC on February 16, 2023 seeking the following records:

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

Item 1: All court complaints or administrative complaints alleging that the EEOC has discriminated against, or is discriminating against, a white employee or white employees based on their race;

Item 2: All court complaints or administrative complaints alleging that the EEOC has discriminated against, or is discriminating against, a male employee or male employees based on their sex.

Item 3: All briefs or memoranda filed in support of a motion for summary judgment alleging that the EEOC has discriminated against, or is discriminating against, a white employee or white employees based on their race;

Item 4: All internal and external communications alleging that (or containing allegations that) the EEOC has discriminated against, or is discriminating against, a white employee or white employees based on their race, that are sent or received by any EEOC Commissioner or any employee in the General Counsel's office (including, e.g., any general counsel, deputy general counsel, or assistant general counsel);

Item 5: All internal and external communications alleging that (or containing allegations that) the EEOC has discriminated against, or is discriminating against, a male employee or male employees based on their sex, that are sent or received by any EEOC Commissioner or by any employee in the General Counsel's office (including, e.g., any general counsel, deputy general counsel, or assistant general counsel);

Item 6: All court rulings or administrative rulings finding that the EEOC racially discriminated against a white employee or white employees, or finding that it has likely committed illegal racial discrimination against a white employee or white employees, or issuing a preliminary or permanent injunction based on alleged or actual racial discrimination against a white employee or white employees;

Item 7: All court rulings or administrative rulings finding that the EEOC discriminated based on sex against a male employee or male employees;

Item 8: All internal and external communications (e-mail, text, instant messaging, calendar items, etc.), between any EEOC Commissioner and any of the following groups (including any officer or staff attorney of the following groups): the NAACP Legal Defense and Education Fund, the National Association for the Advancement of Colored People, Legal Momentum, the National Women's Law Center, the Leadership Conference on Civil and Human Rights, the Southern Poverty Law Center, or Human Rights Campaign.

ECF 7-1 ¶ 4. The request covered records between January 1, 2022 until the present (the date that

EEOC began its search). *Id.* The EEOC emailed Bader on February 23, 2023 asking to narrow the

scope of Items 4, 5, and 8. *Id.* ¶ 5. Specifically, the EEOC asked to (1) exclude mass distribution emails from Items 4, 5, and 8; (2) limit the email search for Items 4 and 5 to only particular custodians (any EEOC commissioner and employees of the Office of General Counsel with the title of Acting, Assistant, or Deputy General Counsel); and (3) for Item 8, to limit the scope of the search to emails and to the following organization domains: @naacpldf.org; @naacpnet.org; @legalmomentum.org; @nwlc.org; @civilrights.org; @splcenter.org; @hrc.org. *Id.* The EEOC also sent a toll clarification letter, requesting that Bader provide the phone numbers that the EEOC should search for in response to Item 8. *Id.* ¶ 8.

Bader agreed to limit the search for Items 4 and 5 to the specified custodians and exclude mass distribution emails from Item 8. *Id.* ¶ 6. Bader also accepted the listed organization domains for Item 8. *Id.* However, Bader did not agree to exclude mass distribution emails from Items 4 and 5 or to limit the scope of Item 8 to just emails. *Id.* ¶ 7. Bader did not provide the requested phone numbers. *Id.* ¶ 9.

The EEOC failed to respond to the request by the statutory deadline, ECF 7-1 ¶ 20, and Bader filed this suit, ECF 1. The EEOC filed a motion to dismiss in part, or in the alternative, a motion for summary judgment in part. ECF 6. Bader opposed, ECF 7, and EEOC filed a reply. ECF 9. Bader subsequently filed a notice of supplemental authority, ECF 10, to which the EEOC responded. ECF 11. The parties' motions are fully briefed and ripe for decision.

## II.    LEGAL STANDARD

The EEOC moves to dismiss in part or, in the alternative, for summary judgment in part. ECF 6. Because both parties rely on evidence outside the pleadings, *see, e.g.*, ECF 6-1 at 19–21; ECF 7 at 17, 22, the Court treats the motion as one for summary judgment. *See, e.g.*, *Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 269–71 (D.D.C. 2022)

(treating a motion to dismiss or for summary judgment as a motion for summary judgment in resolving "reasonably describes" questions). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court will grant a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences" in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

FOIA requires federal agencies to promptly release records to a requester when the request "reasonably describes such records." 5 U.S.C. § 552(a)(3)(A). A request "reasonably describes" agency records if it "would be sufficient [to enable] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990). Whether a request "reasonably describes" the records sought is "highly context-specific," *Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 278 (D.D.C. 2012), but "[t]he linchpin inquiry is whether 'the agency is able to determine precisely what records are being requested,'" *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997)).

In FOIA cases, it is the defending agency's burden to prove it has complied with its obligations under the statute. *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). A court may rely on the agency's "relatively detailed and non-conclusory" affidavits or declarations to resolve a FOIA case, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), if they "describe

the documents and the justifications for nondisclosure with reasonably specific detail," *Military Audit Proj. v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## III.    ANALYSIS

Some FOIA requests are clearly "reasonably described": they detail the names of specific people, dates, or statements sought and leave little room for guesswork. *See, e.g.*, *Shapiro v. CIA*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) (holding that a request was reasonably described because it asked for records that mentioned a specific person, Nelson Mandela, and his known aliases); *Pub. Emps. for Envtl. Resp. v. EPA*, 314 F. Supp. 3d 68, 76 (D.D.C. 2018) (considering the request "precise" because it included the date, speaker, and statements referenced in the agency records). However, FOIA does not require every request to be so precisely described. After all, "FOIA requesters are frequently in no position to know how an agency classifies its documents or what terminology the agency might have used—that is often why they are making a request in the first place." *Gun Owners of Am., Inc. v. FBI*, 594 F. Supp. 3d 37, 47 (D.D.C. 2022).

The D.C. Circuit has identified three ways in which a FOIA request can fail the "reasonably describes" requirement. *See Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 271. The first is if the request contains vague words and descriptions such that the agency is unable "to determine precisely which records are being requested." *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982). The second is if the request seeks difficult to locate records that would entail an "unreasonably burdensome search." *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978). That question turns on whether agency employees can locate the responsive records "with a reasonable amount of effort." *Truitt*, 897 F.2d at 545 n.36. And third, a request is not "reasonably described" if it requires overly burdensome post-search efforts. *See Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 205, 209 (D.C. Cir. 1990) ("*AFGE*").

The EEOC contends that Items 4, 5, and 8 fail all three prongs of the "reasonably describes" test. ECF 6-1 at 14. Because Items 4 and 5 raise similar issues, the Court will address them together before turning to Item 8. For the reasons discussed below, the Court will deny the motion for partial summary judgment as to all three Items.

### A. Items 4 and 5

Items 4 and 5 request the following records:

> Item 4: All internal and external communications alleging that (or containing allegations that) the EEOC has discriminated against, or is discriminating against, a white employee or white employees based on their race, that are sent or received by any EEOC Commissioner or any employee in the General Counsel's office (including, e.g., any general counsel, deputy general counsel, or assistant general counsel);

> Item 5: All internal and external communications alleging that (or containing allegations that) the EEOC has discriminated against, or is discriminating against, a male employee or male employees based on their sex, that are sent or received by any EEOC Commissioner or by any employee in the General Counsel's office (including, e.g., any general counsel, deputy general counsel, or assistant general counsel).

ECF 7-1 ¶ 4.

On the record currently before the Court, Items 4 and 5 are "reasonably described." As to Prong 1, these Items are not vague and have only one reasonable interpretation. Under Prong 2, the EEOC has not put forward a sufficiently detailed declaration explaining why these records are difficult to locate. Finally, the Items survive Prong 3 because the agency's declarations do not sufficiently explain how the post-search efforts resulting from this request would be overly burdensome.

### 1. Prong 1

Prong 1 of the "reasonably describes" test asks whether the agency can "determine precisely which records are being requested." *Yeager*, 678 F.2d at 326. While there are no

categorical rules, requests often fail this prong if they seek records "pertaining to," "relating to," or "concerning" broad subject areas. *See, e.g.*, *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013) (holding that the request was overbroad because it "asked for 'all' records that 'relate to' each subject area"); *Dale*, 238 F. Supp. 2d at 104 (holding that a request seeking "any and all documents, including but not limited to files, that refer or relate in any way to Billy Ray Dale" was not reasonably described). FOIA does not require agency employees to figure out whether documents, which on their face may not appear to have any relevance to the requested information, nonetheless "relate to" or "concern" the topics at issue. Bader correctly points out that Items 4 and 5 do not contain any of the terms that courts commonly strike as unduly vague. ECF 7 at 7–8. Rather, Items 4 and 5 request a specific type of record (internal and external communications), held by a limited set of identified custodians (EEOC Commissioners and employees in the General Counsel's office), containing only certain content (allegations that the EEOC is discriminating against white employees based on race, or male employees based on sex).

The EEOC contends that these requests still fail Prong 1 because Bader did not supply information about who the alleged discriminator or alleged complainant would be and when, where, or how the alleged discrimination took place. ECF 6-1 at 14–15. Without this information, the EEOC argues that it is impossible to know whether Bader is seeking records alleging, for example, discrimination by an administrative judge, by a Commissioner, or by the EEOC itself as an employer. *See id.* But FOIA does not require Bader to identify *ex ante* the alleged discriminator and complainant, or the time, place, and details of the discrimination. *See Gun Owners of Am., Inc.*, 594 F. Supp. 3d at 47. In truth, those are likely the details that Bader is hoping to procure with its request. *See id.* Despite the EEOC's suggestions to the contrary, there is only one reasonable interpretation of these Items: Bader seeks any allegations that the EEOC discriminated

against a white employee on the basis of race or a male employee on the basis of sex, whether that alleged discrimination occurred during an EEOC investigation, during an EEOC adjudication, or was perpetrated by an EEOC employee. Items 4 and 5 therefore survive the first prong.

### 2. *Prong 2*

At Prong 2 of the "reasonably describes" test, courts ask whether the request seeks difficult to locate records that would entail an "unreasonably burdensome search." *Goland*, 607 F.2d at 353. Records are difficult to locate if the agency would be unable to find them "with a reasonable amount of effort." *Ctr. For Immigr. Stud.*, 628 F. Supp. 3d at 271 (quoting *Truitt*, 897 F.2d at 545 n.36). The agency "bears the burden to provide a sufficient explanation as to why such a search would be unreasonably burdensome," and "[t]he required showing is substantial." *Shapiro*, 170 F. Supp. 3d at 155–56. Take, for example, *National Security Counselors v. CIA*, where the plaintiff sought "all [CIA] records pertaining to the IBM supercomputer named 'Watson'." 969 F.3d 406, 409 (D.C. Cir. 2020). The agency submitted a declaration explaining that the CIA's records are "decentralized and compartmented," and that the plaintiff's request would require the CIA to "search every office for any documents containing the word 'Watson'"—a "massive undertaking." *Id.* at 410. The D.C. Circuit concluded, based on that record, that the plaintiff's request required an "unreasonably burdensome" search. *Id.* On the other hand, where the agency offers only "conclusory statements," courts will decline to find that a search is unduly burdensome. *Hall v. CIA*, 881 F. Supp. 2d 38, 53 (D.D.C. 2012); *see Gun Owners of Am., Inc.*, 594 F. Supp. 3d at 43 n.4.

EEOC argues that it "would have great difficulty" locating Bader's requested records. ECF 6-1 at 19. In support, the agency points to a declaration by Michael L. Heise, assistant Legal Counsel of the FOIA Division in EEOC's Office of Legal Counsel. ECF 6-3 (Heise Declaration).

To determine whether it is feasible for the agency to locate responsive records, the Court may rely on information provided in an agency's supporting declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail." *Military Audit Proj.,* 656 F.2d at 738; *see Shapiro*, 170 F. Supp. 3d at 155–56 (requiring a "substantial" showing). The Heise Declaration explains that the EEOC crafted two searches it "reasonably believed would identify potential responsive documents," using search terms like "discrimination" and "white"; "discrimination" and "Caucasian"; "discrimination" and "male"; and "discrimination" and "man." ECF 6-3 ¶ 12. The Heise Declaration does not say how many results these searches returned, but states generally that the agency "has identified 12,939 records that are potentially responsive to . . . Items 4, 5, and 8." *See* ECF 6-3 ¶ 35. The Heise Declaration does not say anything further about whether and why the EEOC would "have great difficulty" locating the records requested in Items 4 and 5. ECF 6-1 at 19. There is no representation, as in *National Security Counselors*, that Bader's request would require the agency to search "every office" across a "decentralized and compartmented" document-retention system, 969 F.3d at 409–10, or that the records at issue are otherwise maintained in such a way that makes them difficult to find. The declaration simply makes no attempt to explain why these allegations of discrimination are so difficult to search for. *Cf. Ctr. For Immigr. Stud.*, 628 F. Supp. 3d at 272. In fact, the Heise Declaration arguably suggests that these records are not so impossible to find because the agency has apparently already managed to locate nearly 13,000 of them.

In its motion, the EEOC explains that Items 4 and 5 could be difficult to fulfill because people do not always use the word "discrimination" to allege that they have been discriminated against. *See* ECF 6-1 at 19–20. For example, someone who believes John has been discriminated against because of his sex might say, "John was way more qualified for the position than Jane. He

should have gotten the position over her." *Id.* at 20. EEOC therefore contends that "[t]o truly locate all records [that] mention[] race or sex discrimination by someone at the EEOC against a male or a white individual is an impossible task." *Id.*

While the Court understands the EEOC's concern, FOIA "does not require perfection." *Shapiro*, 170 F. Supp. 3d at 156. The agency is not required to design a search that will unearth every conceivable responsive record. It need only "ma[k]e a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). Such a search might not turn up the hypothetical "John was more qualified than Jane" record, ECF 6-1 at 20, but "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate," *Dueñas Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). The Heise Declaration does not explain why an agency employee familiar with this subject matter would be unable to design a keyword search "reasonably calculated"—not perfectly calculated—to produce the records Bader seeks. Rather, again, the Heise Declaration suggests that such a search *is* feasible, because the agency has already conducted keyword searches that uncovered nearly 13,000 potentially responsive records.

At this stage, the Court cannot conclude—on the face of the request or from the limited record—that responding to Items 4 and 5 would be "unreasonably burdensome." The Court therefore finds that Items 4 and 5 pass Prong 2.

### 3.  *Prong 3*

A request is not "reasonably described" if it requires overly burdensome post-search efforts. *See AFGE*, 907 F.2d at 205, 209. In making this determination, courts may take into

account the time required to process and redact responsive records. *See id.* at 208-09 (holding that post-search efforts were burdensome because a request for "every chronological office file and correspondent file, internal and external, for every branch office [and] staff office" would "require the agency to locate, review, redact, and arrange for inspection a vast quantity of material"). However, to reach the "overly burdensome" threshold, the number of responsive records is typically quite large. *See, e.g.*, *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 275–77 (D.D.C. 2014) (finding that twenty million responsive records amounting to an estimated 8,000 hours of work placed an unreasonable burden on the agency); *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 272 (finding that 1.6 million pages of responsive records, which would require 8,151 hours or "about 1,018 workdays" to process, required overly burdensome post-search efforts). And although the sheer number of estimated records to be processed is relevant, it is not dispositive. *See Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 273 ("[B]urdensomeness does not boil down to a simple game of numbers."). The court also considers whether the agency's effort would be "largely unnecessary to [the requester's] purpose." *AFGE*, 907 F.2d at 209. In *Center for Immigration Studies*, for example, the court recognized that it was unreasonable to require an agency to produce more than 1.6 million pages of responsive records but was most persuaded by the fact that the agency would have to "process thousands of documents with no conceivable relation to the policies in which the [requester] proclaims an interest." 628 F. Supp. 3d at 273.

The Heise Declaration states that the EEOC has so far identified 12,939 records that are potentially responsive to Items 4, 5, and 8. ECF 6-3 ¶ 35. The agency estimates that each record is about three pages, for a total of 38,817 pages. *Id.* Heise states that it could take a FOIA attorney "years" to review that many documents but does not explain how he arrived at that conclusion. *Id.*;

*cf. Ayuda,* 70 F. Supp. 3d at 275–77. These figures do not account for the yet-undetermined number of text messages and Microsoft Teams messages that could be responsive to those Items. *Id.*

The quantity of documents here—roughly 13,000 records (or approximately 40,000 pages)—even if that estimate is incomplete, is still far smaller than the volume of records at issue in those FOIA cases where requests were deemed "overly burdensome." *Compare Ayuda*, 70 F. Supp. 3d at 275–77 (processing twenty million responsive records would be overly burdensome), *and Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 273 (processing 1.6 million pages of responsive records would be unduly burdesome), *with 100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 66 (D.D.C. 2022) (rejecting argument that reviewing 45,000 rows of information was overly burdensome). Nor is it apparent that the agency's post-search efforts would be unnecessary to the requester's purpose. *See AFGE*, 907 F.2d at 209. And although the Heise Declaration states that it could take an attorney "years" to review the responsive documents, that is a conclusory statement—Heise does not explain how he arrived at that estimate. ECF 6-3 ¶ 35; *see Prop. of the People, Inc. v. DOJ*, 530 F. Supp. 3d 57, 63 (D.D.C. 2021) ("Courts have consistently found that merely claiming that a search would be 'costly and take many hours to complete' is insufficient"); *cf. Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 272 (holding that request required unreasonably burdensome post-search efforts where agency declaration calculated, with specificity, "that it needs 8,151 hours to process so much material . . . [which] equates to about 1,018 workdays— about two years and nine months"). Because the Heise Declaration does not provide the reasonably specific detail necessary to support the EEOC's contention that post-search efforts would be overly burdensome, *see Military Audit Proj.*, 656 F.2d at 738, Items 4 and 5 survive Prong 3 at this juncture.

### B.  Item 8

Item 8 requests the following records:

> All internal and external communications (e-mail, text, instant messaging, calendar items, etc.), between any EEOC Commissioner and any of the following groups (including any officer or staff attorney of the following groups): the NAACP Legal Defense and Education Fund, the National Association for the Advancement of Colored People, Legal Momentum, the National Women's Law Center, the Leadership Conference on Civil and Human Rights, the Southern Poverty Law Center, or Human Rights Campaign.

ECF 7-1 ¶ 4. Bader agreed to limit EEOC's email search to the following organization domains:

@naacpldf.org;  @naacpnet.org;  @legalmomentum.org;  @nwlc.org;  @civilrights.org;

@splcenter.org; @hrc.org. ECF 7-1 ¶ 5.

On the record currently before the Court, Item 8 is "reasonably described." On Prong 1, the EEOC can reasonably construe Item 8 without defining the term "officer." As to Prong 2, the Court cannot definitively say at this stage that searching for the requested text messages would be unreasonably burdensome. Finally, on Prong 3, the EEOC has not provided sufficient evidence to persuade the Court that Item 8 would require overly burdensome post-search efforts.

#### 1.  *Prong 1*

The EEOC argues that the use of the term "officer" renders Item 8 impermissibly vague, because the definition and role of an "officer" differs across each organization. ECF 6-1 at 16–19; ECF 9 at 11. The EEOC analogizes to *Gun Owners of America*, where the plaintiff sought "records of all communications between the FBI and [Governor and Attorney General Offices in Virginia] and agents and employees of the same." 594 F. Supp. 3d at 44. The court found that request was not reasonably described, because "agents and employees" is a vague catch-all phrase and the "term has a wide range of plausible meanings." *Id.* And because the requester specifically asked for records between the agencies and certain "agents and employees," the FBI could not fulfill the

request without understanding who qualified as an "agent" or "employee" and who did not. *See id.* at 43.

If Item 8 sought all communications between an EEOC Commissioner and *officers of the named organizations*, EEOC's argument would be compelling. But instead, Item 8 requests communications "between any EEOC Commissioner and any of" the named organizations. ECF 7-1 ¶ 4. The subsequent parenthetical phrase, "(including any officer or staff attorney of the following groups)," so far as the Court can tell, neither limits nor expands that search.[2] Item 8 is therefore analogous to a different request in *Gun Owners for America* that was upheld as reasonably described: a request for "records of all communications between the FBI and the Virginia Department of State Police" about a particular policy. 594 F. Supp. 3d at 46, 49. The agency contested this request as vague because it "d[id] not identify by name the relevant Virginia government officials." *Id.* at 46. The court disagreed, explaining that "determining whether [a] communication was with" a particular organization or agency—in that case, the Virginia State Police—"is a straightforward inquiry with clear and obvious criteria." *Id.* The same is true here. If the agency identifies an otherwise responsive email between an EEOC Commissioner and "janedoe@naacpnet.org," the agency need not inquire into whether Jane Doe is an officer of the NAACP, a staff attorney, or some other employee. Regardless of what Jane Doe's job is, that email falls within the scope of Item 8.

"An agency's claim that it is hopelessly torn between a reasonable and an unreasonable reading of a FOIA request will not support a conclusion that the request is deficient." *Gun Owners of Am., Inc.*, 594 F. Supp. 3d at 44. Here, Item 8 is reasonably read to cover communications

---

[2] To the extent the parenthetical is doing any work, it merely seems to clarify that the agency should consider a communication with an individual who works for one of the named organizations as a communication with that organization.

between an EEOC Commissioner and a named organization, regardless of who at the named organization is on the other side of that communication. Because the request can be reasonably construed without an understanding of the term "officer," the Court concludes that Item 8 is not vague and survives Prong 1.

### 2. *Prong 2*

The EEOC takes issue with Item 8's request for text messages. *See* ECF 6-1 at 24–25. As the Heise Declaration explains, because Bader did not provide specific phone numbers relevant to Item 8, "the EEOC does not know if a particular text message involves a member of one of the organizations without reading the entire message itself, and even then the EEOC likely would not know if a particular individual is employed by one of the requested organizations in [I]tem 8 of Mr. Bader's request." ECF 6-3 ¶ 13. Although the EEOC styles this as a Prong 3 problem, *see* ECF 6-1 at 24–25, the Court sees this as a Prong 2 question: the agency understands what text messages Bader is asking for, but contends that it would be too difficult to locate those responsive messages. The Court will therefore treat this as a Prong 2 inquiry and ask whether the agency could locate responsive text messages "with a reasonable amount of effort." *Ctr. For Immigr. Stud.*, 628 F. Supp. 3d at 271 (quoting *Truitt*, 897 F.2d at 545 n.36).

Unlike the emails at issue in this case, text messages are not accompanied by an organization domain name indicating where the sender or recipient works. Based on statements in the Heise Declaration, *see* ECF 6-3 ¶ 13, the Court understands EEOC to be making the following argument: imagine that the agency identifies a potentially responsive text message between an EEOC Commissioner and unidentified phone number (123) 456-7890. The agency would need to determine (1) who (123) 456-7890 is, and then (2) whether that individual works for one of the named organizations. Such an involved process could exceed the bounds of FOIA. The statute

does not require agencies to conduct research in order to fulfill requests, and matching unidentified phone numbers to names and places of employment could cross the line from "search" into "research." *See Nat'l Sec. Couns.*, 898 F. Supp. 2d at 269 (explaining that FOIA does not require agencies to "collect information, conduct research, [or] analyze data").

However, where a requester "seek[s] records related to a particular topic, exchange, or piece of official business, it would be reasonable to expect Department employees to locate any agency records in their personal accounts pertaining to that topic, exchange, or piece of business and forward them to the FOIA coordinator." *Landmark Legal Found. v. DOJ*, 211 F. Supp. 3d 311, 319 (D.D.C. 2016). Presumably, the agency could ask EEOC Commissioners whether they communicate via text with individuals from the named organizations and, if so, to provide those individuals' names and phone numbers. *See, e.g.*, *Energy Pol'y Advocs. v. SEC*, 699 F. Supp. 3d 56, 62 (D.D.C. 2023) (explaining that agency staff "worked with the named officials to individually search their work phones for [text] messages to the outside officials as well as messages containing" relevant search terms). The agency has not explained why such an approach would be unworkable here. Bader posits that "[a]n EEOC Commissioner who exchanges text messages will likely know if a particular individual he is texting with is employed by one of the requested organizations," *see* ECF 7-1 at 8, and the EEOC did not rebut that argument in its reply, *see* ECF 9.

Of course, there could be a reason why that approach, although it has worked in other contexts—*see Energy Pol'y Advocs.*, 699 F. Supp. 3d at 62—would be infeasible here. (For example, if a Commissioner has left the EEOC since January 2022, this approach may be impracticable.) If that proves to be the case, the agency may tell the Court so (in a detailed and specific declaration) at the post-search stage. But today, the Court cannot definitively say—on the

limited record before it—that these text messages would be too difficult to locate. Item 8 therefore survives Prong 2, with the understanding that this decision—like the Court's other conclusions in this opinion—is without prejudice to EEOC raising this issue again, if necessary, at a later stage of the litigation.

### 3. *Prong 3*

As noted above, the EEOC argued that Item 8's request for text messages would fail Prong 3, but the Court found it more appropriate to address those arguments as a matter of Prong 2. The agency has not made any argument (or, any argument distinct from those the Court has already addressed above) that once responsive text messages are located, processing them would be overly burdensome. The EEOC does not provide any estimate as to the volume of responsive text messages or the time it would take to process them. *See* ECF 6-3 ¶ 35 (noting that the agency's estimated universe of records "does not yet include the undetermined number of text messages"). Item 8 therefore survives Prong 3.

*    *    *

For the foregoing reasons, Defendant's motion to dismiss in part, or in the alternative for partial summary judgment, ECF 6, is **DENIED**.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: March 26, 2025